IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| SALWA BASTA, | ) | |
| Plaintiff, | ) | |
| v. | ) | 10 C 4003 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| AMERICAN HOTEL REGISTER | ) | |
| COMPANY | ) | |
| an Illinois corporation, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Salwa Basta sued her former employer, American Hotel Register Company ("American Hotel"). Basta's suit arises out of an injury that she sustained while performing her job. In her Complaint, Basta alleges that the Defendant: (1) discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act ("the ADEA"); (2) failed to accommodate her disability in violation of the Americans With Disabilities Act ("the ADA"); (3) retaliated against her in violation of the ADA and Title VII of the Civil Rights Act of 1964; and (4) retaliated against her in violation of Illinois law. The Defendant now moves for summary judgment on all of her claims. For the reasons stated below, Defendant's Motion for Summary Judgment is granted.

## I. Defendant's Motion to Strike

As an initial matter the Court must address the Defendant's Motion to Strike Basta's response to the Defendant's Local Rule 56.1(a) statement of facts and Basta's statement of additional facts filed pursuant to Local Rule 56.1(b)(3)(C). The Defendant moves to strike because the response was untimely and Plaintiff failed to seek leave to file the response late. The Court declines to strike Basta's 56.1(b)(3) response in its entirety for having been untimely filed. Although this Court has considerable discretion to mandate strict compliance with Rule 56.1, including to mandate that filings pursuant to the Rule be done in compliance with the Court's own orders and deadlines, such a harsh remedy is not warranted in this case. *See, e.g., Ammons v. Armark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004) ("We have also repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1."). Basta's failure to timely file her response will nevertheless not go completely unexcused.

Some of Basta's responses to the Defendant's statement of material facts must be stricken on other grounds. In what appears to be an attempt to manufacture disputed issues of material facts, Basta filed an affidavit in which she contradicts much of her own prior sworn testimony. Such a ploy fails to create a material issue of disputed fact. *See, e.g., Purrghoraishi v. Flying J. Inc.,* 449 F.3d 751, 759 (7th Cir. 2006) (Plaintiff cannot create an issue of material fact by submitting an affidavit that contradicts an earlier deposition);

2

*Amadio v. Ford Motor Co.,* 238 F.3d 919,926 (7th Cir. 2001) ("[W]here a deposition and affidavit are in conflict, the affidavit is to be disregarded..."); *Bank of Illinois v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions.").

Basta attempts to salvage her claims by creating disputes where none existed before. For example, in her response to paragraph 10 of the Defendant's statement of material facts, which states: "Each of the accounts payable representatives were assigned to perform this task and the workload was divided up amongst them." (Def. 56.1 Facts ¶ 10), Basta denies this claim, citing to paragraph 15 of her affidavit. Paragraph 15 of Basta's affidavit states, among other things, that she "was the only person who was sent into the storage room in search of files..." (Basta Aff., ¶ 15). This contradicts her prior deposition testimony when she testified that all of the members of the accounts payable department were tasked with pulling files from the storage room. (Basta Dep., pg. 17). Therefore, the Court strikes the following responses to Defendant's statement of material facts because they are contradicted by Basta's prior sworn testimony: paragraphs 10, 11, and 40.

In addition, a number of Basta's responses are not substantiated by the evidence she cites to support them. *See Ammons,* 368 F.3d at 817 ("[W]here a non-moving party denies a factual allegation...that denial must include a specific reference to...the record that

*supports* such a denial.") (emphasis supplied); *Bradley v. Work*, 154 F.3d 704, 708 (7th Cir. 1998) ("Key to this system, which is typical of the local rules governing summary judgment in this circuit, is the act of specifically correlating evidence in the record to factual propositions."). Therefore, the Court strikes paragraphs 19, 20, 23, 24, and 25 of Basta's response to the Defendant's statement of material facts because the evidence cited to support them fails to do so. As an example, Defendant's paragraph 20 states: "Plaintiff's manager did not believe that Plaintiff could perform all of her prior representative functions on a limited four hour basis because Plaintiff would not be available to respond to vendor/customer inquires in a proper fashion due to the hours that Plaintiff would now be working on her limited schedule." (Def. 56.1 Facts ¶ 20). Basta denies this claim, citing to paragraphs 7 and 21 of her affidavit and to pages 70-73 of her deposition. The portions of her affidavit to which she cites discuss Basta's feeling that she was "at odds" with Mary Wallace, whom she claims began scrutinizing her more. This fails to contradict anything in paragraph 20 and her deposition testimony concerns testimony about her duties as an accounts payable representative after she returned to work. Nothing in the cited portion of the transcript refers to, let alone rebuts, the issue that is the subject matter of paragraph 20. As a result, the Defendant's statement of facts on each of these paragraphs is deemed admitted and uncontroverted. *See Smith v. Lamz*, 321 F.3d 680 (7th Cir. 2003) ("[W]hen a responding party's statement fails to controvert the facts as set forth in the moving party's

4

statement in the manner dictated by the rule, those facts shall be deemed admitted for the purposes of the motion.").

The Court further strikes Basta's statement of additional facts in its entirety . Rule 56.1(b)(3)(c) gives the non-moving party the option of providing the Court with "a *concise* response to the movant's statement that shall contain...*short* numbered paragraphs[] of any additional facts that require the denial of summary judgment..." *See* L.R. 56.1(b)(3)(C) (emphasis supplied). The Rule creates an opportunity for the non-moving party to make factual assertions, supported by evidence, in an orderly fashion. The non-moving party's statement of additional facts is not a vehicle for factual or legal arguments. *See Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009) (holding that where "much of [the party's] factual submission was argumentative" it was appropriate to strike it); *Judson Atkinson Candies v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 n. 2 (7th Cir. 2008) ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts."). Legal arguments are the province of the supporting memorandum of law provided for by Rule 56.1(b)(2). Furthermore, the additional statement of facts must be concise, containing only one or two factual propositions per paragraph. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("The numbered paragraphs should be short; they should contain only one or two individual allegations, thereby allowing easy response.") (quoting *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000)). And again, the non-moving party cannot

advance facts in its additional statement that are contradicted by its own prior sworn testimony or that are unsubstantiated by the record evidence. *See Purrghoraishi*, 449 F.3d at 759; *Amadio,* 238 F.3d at 926; *Ammons,* 368 F.3d at 817; *Bank of Illinois*, 75 F.3d at 1168. The Court has the discretion to strike in its entirety a party's statement of facts when the party fails to comply with the Local Rules governing summary judgment. *See generally, Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000) (upholding district court's decision to entirely strike the non-moving party's statement where it "contained evasive and contradictory answers and legal arguments.").

Basta's statement of additional facts is replete with factual and legal arguments. (*See, e.g.,* Pl. 56.1 Add'l Facts ¶¶ 2; 3; 5; 6; 7; 9; 11). For example, in paragraph 2 of her statement of additional facts Basta states: "Defendant's representatives were *grossly negligent*, past the threshold of criminal recklessness." (Pl. 56.1 Add'l Facts ¶ 2) (emphasis in original). This is the type of legal argument that Rule 56.1(b)(3)(C) proscribes. Likewise, several of her factual statements are contradicted by the evidence she cites to support them. (*Compare* Pl. 56.1 Add'l Facts ¶ 9 *with* Pl. Ex. 4). For example, paragraph 9 of Basta's statement of additional facts states: "Plaintiff's workers compensation attorney asked American Hotel Register to provide part-time employment for his client." (Pl. 56.1 Add'l Facts ¶ 9). By contrast, the letter that Basta refers to in paragraph 9 contains no request to provide Basta with part-time employment. Instead, the letter says that Basta can work

6

"light duty." (*See* Pl. Ex. 4). Basta also attempts to offer facts that contradict her prior sworn testimony. (*Compare* Pl. Add'l Facts ¶ 12 *with* Basta Aff., ¶ 29 *with* Basta Dep., pg. 93). In paragraph 12 of her statement of additional facts, for example, Basta claims that she "would have refused a modified schedule when she returned to work on February 16, 2009, if [she] had known that her 'unworked' hours would be counted against her FMLA leave." (Pl. 56.1 Facts ¶ 12). For this proposition she cites to paragraph 29 of her affidavit, which directly contradicts the matter asserted in paragraph 9 of her statement of additional facts. In paragraph 29 of Basta's affidavit she claims that she protested the four hours of time that would be counted as leave under the Family Medical Leave Act. (Basta Aff., ¶ 29). This assertion, in turn, contradicts Basta's prior sworn deposition testimony that she never discussed Family Medical Leave Act leave with the Defendant. (Basta Dep., pg. 93). Finally, many of Basta's statements run afoul of the concision required by Local Rule 56.1. (*See, e.g.,* Pl. 56.1 Add'l Facts ¶¶ 2; 3; 7). For example, paragraph 7 alone advances eight individual matters of fact. (Pl. 56.1 Add'l Facts ¶ 7). In short, Basta's statement of additional facts is improper in both its form and content and is therefore stricken.

This Court requires strict compliance with the Local Rules, and failure to comply with them may properly result in the Court disregarding the additional facts that a party has supplied. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-810 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's

non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed.").  Because Basta was untimely in filing her response, she relies on an affidavit that is contradicted by her prior sworn testimony to support her response, she makes denials with citations to the record that do not support her position, and her statement of additional facts is improper for the reasons just set forth, the Court strikes Basta's statement of additional facts for her failure to comply with Local Rule 56.1.  *See Bordelon,* 233 F.3d at 527 (upholding the district court's decision to strike the statement of material facts in its entirety, instead of selectively, for failure to comply with the rules).

## II.  The Facts

American Hotel is an Illinois corporation located in Vernon Hills, Illinois.  (Pl. 56.1 Resp. ¶ 1).  Basta worked for American Hotel for approximately thirteen years until she was terminated on February 22, 2010.  (*Id.* ¶ 2).  Basta began her employment with American Hotel on February 3, 1997, as a customer service representative.  (*Id.* ¶ 7).  Eventually, Basta transferred into the accounts payable department, where she held the position of accounts payable representative.  (*Id.* ¶ 8).  Basta worked in the accounts payable department until she was terminated in 2010.  (*Id.*).

In early December of 2008, Basta's manager, Mary Wallace, assigned all of the accounts payable representatives to review vendor invoices.  (*Id.* ¶ 9).  She directed the

representatives to determine whether American Hotel was due a credit from any of its vendors. (*Id.*). She directed each of the accounts payable representatives to perform this task, which was divided up amongst the representatives. (*Id.* ¶ 10). The task required each representatives to pull old invoices that were stored in two separate storage rooms. (*Id.* ¶ 11). One of the storage rooms was located on the same floor as the department and the other was located in the basement of the American Hotel. (*Id.* ¶ 12).

On December 9, 2008, while Basta was retrieving old invoices from the storage room located in the basement, she attempted to remove a box of vendor invoices located on an upper shelf. (*Id.* ¶ 12). The box fell, causing Basta to injure her shoulder and knee. (*Id.* ¶ 13). As a result of her accident, Basta went to the hospital to be checked out and then returned home. (*Id.* ¶ 14). Shortly thereafter Basta saw her physician. (*Id.*) He prescribed physical therapy for her shoulder injury and directed her to take some time off work to allow the injury to heal. (*Id.*).

Basta eventually returned to work on February 16, 2009. (*Id.* ¶ 16). Her physician, however, only released her to work subject to certain restrictions. (*Id.*). These restrictions included that she work a limited four-hour work day and prohibited the use of her right arm. (*Id.* ¶ 17). Basta's work restrictions limited the amount of work that she could perform as compared to the regular duties of the other accounts payable representatives. (*Id.* ¶ 18). Wallace, after reviewing Basta's prescribed restrictions, concluded that upon her

return to work Basta would be able to enter vendor invoices into the computer system, a task that Basta could perform using only her left arm as prescribed by her physician. (*Id.* ¶ 19).

Wallace did not believe that Basta could perform all of her prior job functions on a limited four-hour basis because she would be unavailable to respond to vendor/customer inquiries in a proper fashion during the limited four-hour day. (*Id.* ¶ 20). While Basta was working the limited schedule prescribed by her doctor she would frequently need to take breaks to rest her arm. (*Id.* ¶ 21). Because of her four-hour schedule, Basta was not entitled to fifteen minute breaks pursuant to company policy. (*Id.* ¶ 22). Notwithstanding this policy, Basta was allowed to stop working and permitted to rest her arm at her desk. (*Id.* ¶ 23). In addition, she was allowed to leave her desk and take breaks as necessary. (*Id.* ¶ 24).

Eventually Basta's shoulder injury required surgical intervention. (*Id.* ¶ 26). Basta took approximately three months medical leave from April 22 to July 29, 2009. (*Id.* ¶¶ 26-27). When Basta returned to work after surgery her physician again placed restrictions on the length of her work day, although he now permitted her to use her right arm. (*Id.* ¶ 27). As a result, Basta continued to work a shortened four-hour day and the use of her right arm was limited. (*Id.* ¶ 28). Because of Basta's work restrictions, Wallace assigned Basta to work on a new vendor invoicing system called VendorNet. (*Id.* ¶ 29). VendorNet was

implemented by American Hotel during Basta's leave.  (*Id.*).

On August 3, 2009, American Hotel's Human Resources department met with Basta and presented her with a letter informing her of how much leave time she had used under the Family Medical Leave Act ("the FMLA") and how much leave time she had remaining under the Act.  (*Id.* ¶ 30).  Basta was also told that the four hours of the regular workday that she could not work due to her medical restrictions would be counted as leave time under the FMLA.  (*Id.* ¶ 31).

On January 29, 2010, Basta had to have a second surgery performed on her right shoulder.  (*Id.* ¶ 31).  On January 25, 2010, prior to Basta's last day of work before her surgery, Human Resources again met with Basta to present her with a letter detailing how much leave time she had remaining under the FMLA.  (*Id.* ¶ 33).  Human Resources informed her that because she had used so much leave time under the Act, that her available leave time would expire on February 19, 2010.  (*Id.* ¶ 34).  Thus, Basta was informed that she would need to be released to return to work no later than February 22, 2010, or her employment would be terminated due to the fact that she had exhausted all of her available leave time.  (*Id.* ¶ 35).  Basta's physician did not release her to return to work until April of 2011.  (*Id.* ¶ 36).  In contrast, an independent medical evaluation that was performed on Basta on February 1, 2011, concluded that she was able to return to work immediately.  (*Id.*).  Basta failed to return to work from her second surgery by February 22,

2010, and therefore American Hotel terminated her on that date. (*Id.* ¶ 37).

During the course of these affairs, Basta never made an explicit request to become a part-time employee. (*Id.* ¶ 38). Although Basta expressed a readiness to perform "light duty" work and discussed having a "light work load," there is no evidence in the record to suggest that Basta ever asked to become a part-time employee. (*Id.*). Likewise, Basta never raised with the Defendant the issue of her FMLA time being counted against her reduced work hours. (*Id.* ¶ 40).

In December 2009, an employee younger than Basta, Anna Naditz, requested to work part-time because she intended to return to school on a full-time basis in January 2010. (*Id.* ¶ 41). When Anna Naditz's request was made Wallace conferred with her superior at the time, the Chief Financial Officer of the company, and Human Resources. (*Id.* ¶ 42). It was determined that, because of the new VendorNet system, invoices were decreasing and as such the workload also was decreasing. (*Id.*). As a result, American Hotel decided that the accounts payable department could have a part-time employee. (*Id.*). At this time, Wallace knew that Basta was again going out on medical leave and that the department would need someone to perform the job that Basta was performing on the VendorNet system. (*Id.* ¶ 43). Wallace therefore approved Anna Naditz's request for part-time employment. (*Id.* ¶ 44). Anna Naditz began working in a part-time position in January 2010. (*Id.* ¶ 45).

### III. The Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### IV. Discussion

Basta's asserts three claims against American Hotel based on federal law and one supplemental state law claim. First, she argues that American Hotel discriminated against her by firing her on the basis of her age in violation of the ADEA (Count I). Basta claims that she can prove that age-based discrimination occurred under both the direct and the indirect methods of proof available to a plaintiff bringing suit under the Act. Basta next claims that the Defendant failed to provide her with "reasonable accommodations" for her disability in violation of the ADA (Count II). Third, she alleges retaliation for expressing her intention to seek legal recourse for the alleged discrimination and her need for medical leave under the FMLA in violation of Title VII and the ADA (Count III). Fourth, she alleges unlawful retaliation under Illinois law (Count IV). However, Basta states in a footnote to

her response brief that she will not be prosecuting Counts III and IV as they "have not proven to be viable in a practical sense." *See* Pl. Resp. Brief pg. 2 n.2. Basta therefore fails to address these claims in her brief. American Hotel addressed each claim, explaining why it is entitled to judgment as a matter of law on each issue. Because Basta failed to respond to American Hotel's arguments and purports to surrender the claims, she thereby waives them. Such a failure to properly advance an argument with citation to legal authority constitutes waiver. *See Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n. 1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even when those arguments raise constitutional issues)."); *United States v Amerson,* 185 F.3d 676, 689 (7th Cir. 1999); *Swanigan v. Trotter,* 645 F.Supp.2d 656, 681 (N.D. Ill. 2009). Because she has abandoned those claims and fails to support them, summary judgment is granted in the Defendant's favor on Counts III and IV of Basta's Complaint.

### A. The Age Discrimination in Employment Act

To state a valid cause of action under the ADEA, 29 U.S.C. § 621 *et seq.,* a plaintiff may establish discrimination either by using the direct method of proof or the indirect, burden-shifting, method of proof. *See Naik v. Boehringer Ingelheim Pharms.,* 627 F.3d 596, 599 (7th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). To state a valid claim under the Act the employee must "establish that he could not have been treated

adversely by his employer 'but for' the employer's motive to discriminate against him because of his age." *Wade v. Lerner N.Y., Inc.,* 243 F.3d 319, 322 (7th Cir. 2001) (quoting *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999)). Under the direct approach, a plaintiff must come forward with sufficient evidence that a reasonable fact finder would conclude points directly to a discriminatory reason for the employer's action. *See Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008). A plaintiff may establish discrimination under the direct method of proof through direct or sufficiently compelling circumstantial evidence. *Id.* A plaintiff seeking to show intentional discrimination under the direct method may introduce circumstantial evidence that points directly towards a discriminatory reason for the employer's action that includes:

> (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

*Atanus*, 520 F.3d at 672 (quoting *Hemsworth v. Quotesmith.com, Inc.,* 476 F.3d 487, 491 (7th Cir. 2007)).

Under the indirect method of proof, a plaintiff may establish a *prima facie* case of age discrimination by showing that: (1) she belongs to a protected class; (2) her performance met her employer's legitimate job expectations; (3) she suffered an adverse employment

action; and (4) similarly situated others not in her protected class received more favorable treatment. *See Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008); *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643 (7th Cir. 2006). If a plaintiff is successful in establishing a *prima facie* case of age discrimination, the burden then shifts to the employer to show a legitimate, non-discriminatory reason for the adverse action. *See Lucas*, 539 F.3d at 690. If the employer can offer such a legitimate, non-discriminatory reason the burden then shifts back to the plaintiff, who may then rebut the employer's reason by proving that it is a mere pretext for discrimination. *See Id.* Pretext is more than a mistake or negligence on the part of the employer. *See Keri*, 458 F.3d at 643. Rather, pretext is a deliberate falsehood. *See Id.* To demonstrate pretext, a plaintiff must show that the employer's stated reason for terminating her was not only dishonest or phony, but also that the actual reason for the decision was based on an illicit discriminatory basis. *See Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 663 (7th Cir. 2011). Pretext will not be found where an employer holds an honest belief for the reason it offers. *See Id.* The burden of showing that the employer intentionally discriminated against a plaintiff remains on the plaintiff. *See Keri*, 458 F.3d at 643.

Basta offers no direct evidence to show that American Hotel intentionally discriminated against her because of her age. Nor does she offer circumstantial evidence that might suffice to show discrimination under the direct method. Basta relies on the fact

that she was tasked with performing the hazardous assignment of retrieving boxes from the storage facility as proof of a discriminatory motive or bias on the part of American Hotel and that similarly situated employees outside of the protected class were not required to perform this task. She argues that tasking her with this assignment was a pretext for age discrimination. Her assertion, however, is directly contradicted by her own deposition in which she testified that *all* of the accounts payable representatives were assigned the same job, including the job of gathering old invoices that were stored in the two separate storage areas. Basta's claim does not present evidence of direct discrimination because one could not find discriminatory bias, without inference or presumption, as required by the direct method. *See Antus*, 530 F.3d at 670.

Basta next claims that there is "direct" evidence of American Hotel's discriminatory motive by virtue of American Hotel treating the four hours a day that Basta could not work due to medical restrictions as FMLA leave. She claims that this too was a pretext for age discrimination. This contention, however, is contrary to law, as it is not discriminatory for an employer to provide an employee with a reduced schedule as a reasonable accommodation due to a medical condition while simultaneously treating the restricted time as FMLA leave. *See Murray v. AT&T Mobility*, 374 Fed. Appx. 667, 671 (7th Cir. 2010) (holding that an employer is within its rights to charge time spent not working due to a modified work schedule as FMLA leave even where the modification is part of a reasonable

accommodation under the ADA). Furthermore, Basta confuses the indirect method of proof with the direct method. Under the direct method there is no need to show pretext because direct evidence is adduced to show the prohibited animus. By contrast, pretext is part of the indirect method of proof insofar as it is used to rebut the employer's legitimate, non-discriminatory explanation offered to justify its action. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) ("A plaintiff does not reach the pretext stage, however, unless he first establishes a *prima facie* case of discrimination under the indirect method."). Therefore, Basta fails to satisfy the direct method of proof in her attempt to show that American Hotel discriminated against her because the evidence she offers fails to present direct proof of an illicit motivation on the part of American Hotel without the need for inference or presumption. *See Antus*, 530 F.3d at 670. In short Basta fails to present "a convincing mosaic of circumstantial evidence sufficient to prevail under the direct method." *See Ptasznik v. St Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006) (citing *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003)).

Basta attempts to prove her age discrimination claim using the indirect method as well. First, Basta is a member of a protected class for the purposes of the Act since she is older than 40 years old. *See Martino v MCI Communs. Servs.*, 574 F.3d 447, 453 (7th Cir. 2009). Basta suffered an adverse employment action because she was terminated from her job, which is a qualitative change in the condition of employment amounting to an adverse

employment action. *See Johnson v. Cambridge Indus. Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

Because the Defendant does not dispute the point, it can be inferred that Basta was meeting American Hotel's legitimate job expectations. The dispositive issue, therefore, is whether the Defendant treated a similarly situated employee outside of the protected class more favorably than it treated Basta.

Anna Naditz, who is significantly younger than Basta, was similarly situated to her; they worked in the same department, did essentially the same job, and had the same supervisor. *See Naik*, 627 F.3d at 600 (citing *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-366 (7th Cir. 2009)). Intending to go back to school in January 2010, Naditz asked to transition from full-time employment to part-time employment in the accounts payable department. The company determined that due to increases in efficiencies, the accounts payable department could have a part-time employee. At that time Wallace knew that Basta was again going on medical leave for an unknown length of time and that she would need someone to do the job that Basta had been performing on the VendorNet system. For these reasons, Wallace approved Anna Naditz's request to become a part-time employee. Construing the facts in the light most favorable to Basta, the Court finds that a similarly situated employee outside of the protected class received more favorable treatment than Basta.

The burden therefore shifts to the Defendant to offer a legitimate, non-

discriminatory reason for the adverse employment action it took against Basta. *See Everroad v. Scott Truck Sys.*, 604 F.3d 471, 477 (7th Cir. 2010) ("[W]e first determine whether a plaintiff has established a *prima facie* case before putting the employer to the burden of demonstrating a non-discriminatory reason for a termination and engaging in the pretext analysis."). As has already been discussed, the workload for the department had decreased, making it feasible to transition a full-time employee to part-time employment. *See Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006) (holding that a reduction in work-force needs brought about by new technology is a legitimate, non-discriminatory basis upon which to terminate an employee). More importantly, Basta was preparing to go on medical leave for an unknown length of time. The Defendant needed someone to do the work that Basta had been doing on the VendorNet system on a part-time basis. In addition, Basta never asked to become a part-time employee. *See Sembos v. Phillips Components*, 376 F.3d 696, 702-702 (7th Cir. 2004) (holding that where an employee does not apply for, or express interest in, a different job the failure to transition the employee to the different job does not lead to an inference of discrimination) (citing *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 234 (7th Cir. 1992) and *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985) (holding that an employee who expressed no more than a "vague interest" in an open position could not establish a *prima facie* case of discrimination)). However, even if Basta had requested part-time employment, American Hotel was obligated to hire someone to

do the VendorNet system work while she was on leave for what turned out to be fourteen months.

American Hotel's decision to fire Basta was based on her failure to return to work after exhausting her leave time under the FMLA. This is a legitimate reason to terminate employment. *See Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006) ("[A]n employer is under no obligation to reinstate an employee who misuses disability leave."); *Haas v. Zurich North America,* No. 05 C 1421, 2006 WL 2849699 (N.D. Ill. Sept. 29, 2006) (holding that firing an employee for failing to report for work after the expiration of FMLA leave was not actionable); *see also* 29 U.S.C. § 2612(a)(1) ("[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period...").  Basta has provided no evidence to suggest that the Defendant's employment decision was based on a discriminatory motive, as required by the Act.  "An employer can fire an employee for any reason, fair or unfair, so long as the decision to terminate is not based on age or some other protected category." *Kier v. Commercial Union Ins. Co.,* 808 F.2d 1254, 1259 (7th Cir. 1987).  "[E]mployers act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not mater." *Baron*, 195 F.3d at 341.

Basta has not presented any evidence from which a reasonable fact finder would conclude that the decision to terminate her for failing to return to work was a pretext for

age discrimination. Indeed, in her brief Basta does not offer any argument in law or fact to show that the decision was pretextual, nor does she attempt to make out a *prima facie* case of age discrimination. Instead she states: "Under the indirect method of proof, Plaintiff *would* be able to present a *prima facie* case of age discrimination, just as surely as Defendant would be able to show a 'legitimate' explanation for the disparities that Plaintiff had managed to highlight. The burden *would* thereupon shift to the Plaintiff to present evidence that the proffered reason was pretextual. Plaintiff is confident that such burden *could be met* with room to spare." *See* Pl. Resp. Brief pg. 13 (emphasis supplied). The issue of pretext is one to be decided by a court. *See Walker v. Glickman*, 241 F.3d 884, 890 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the Plaintiff] presented sufficient evidence that [the employer's] reason was a lie for the action it took."). It is proper for the Court to consider pretext on summary judgment, and Basta's statement about what she might prove in the future is puzzling. Basta fails to present an adequately developed argument with citation to legal authority to make out a *prima facie* case of discrimination or to prove pretext for the Defendant's legitimate, non-discriminatory employment decision. This constitutes waiver. *See Kramer,* 355 F.3d at 964 n. 1; *Amerson,* 185 F.3d at 689; *Swanigan*, 645 F.Supp.2d at 681. Therefore, the Defendant's decision to grant Anna Naditz's request for part-time employment was done for the legitimate purpose of fulfilling the needs of the department at the time.

Likewise, the decision to fire Basta was based on the legitimate, non-discriminatory reason that she failed to return to work.

As has been shown, Basta has no direct evidence of discrimination by the Defendant. Basta fares no better under the indirect method of proof because she cannot establish that a similarly situated employee outside of the protected class was treated more favorably than she was *because of* rather than *in spite of* her age. The Defendant has offered a legitimate, nondiscriminatory reason firing Basta. Because Basta does not introduce any evidence of pretext, or even address the issue, there can be no finding of pretext on the part of the Defendant, and its legitimate, nondiscriminatory reason for its employment decisions cannot be rebutted. Having failed to directly establish discrimination, unable to make out a *prima facie* case of discrimination, and without any evidence of pretext, Basta's claim under the ADEA cannot survive summary judgment. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).

*B. The Americans With Disabilities Act*

Count II of Basta's Complaint alleges that the Defendant violated the ADA by failing to provide her with a reasonable accommodation for her disability. *See* 42 U.S.C § 12101 *et seq.* To state a valid cause of action under the ADA a plaintiff must show that: (1) she is a "qualified individual with a disability"; (2) the defendant knew of the disability; and (3) the defendant failed to reasonably accommodate her disability. *See Gratzl v. Office of Chief*

*Judges of 12th, 18th, 19th, and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010).

The Defendant concedes that Basta is a qualified individual with a disability of which it was aware. The only question then is whether the Defendant provided reasonable accommodations to Basta. American Hotel provided Basta with reasonable accommodations for over a thirteen month period of time. First, American Hotel assigned Basta to work that complied with her medical restrictions. Second, Basta was allowed to work a four-hour day, as prescribed by her physician. Third, American Hotel allowed Basta to work on a task using only her left arm. Fourth, American Hotel permitted Basta to take the breaks prescribed by her doctor. Basta now claims that these accommodations were insufficient and that she was also entitled to work part-time–an accommodation she never sought.

Basta claims that American Hotel did not reasonably accommodate her disability because it deducted the portion of the day that she did not work from her leave time under the FMLA. However, it is not improper for an employer to provide an employee with a reduced schedule as part of a reasonable accommodation while also attributing the unworked portion of the plaintiff's workday as leave time under the FMLA. *See Murray*, 374 Fed. Appx. at 671 (employer was entitled to deduct time not worked pursuant to a reduced schedule accommodation under the ADA as leave time for the purposes of the FMLA); *see also* 29 C.F.R. § 825.702(c) (employer may provide a reduced schedule as a

reasonable accommodation and count the unworked time as FMLA leave so long as the employee is notified). Here, American Hotel notified Basta of her rights under the FMLA and apprised her of the fact that they would deduct her unworked hours as FMLA leave. In fact, it is "the general rule" that available leave time, such as short-term disability and workers' compensation, can be charged as leave time under the FMLA. *See Id.* (citing *Hendricks v. Compass Group, USA, Inc.*, 496 F.3d 803, 805 (7th Cir. 2007) and *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 941-942 (7th Cir. 2007)). Therefore, deducting the time Basta could not spend working from her leave time under the FMLA does not constitute a failure to provide reasonable accommodations. Indeed, Basta testified that she never even raised the issue of her unworked hours being counted as leave for the purposes of the FMLA with the Defendant even though the Defendant's Human Resources representatives informed her of her remaining leave time under the Act and that the remaining four hours of regular work that Basta could not perform due to her restrictions would be treated as FMLA leave.

There is no reason that the Defendant should have automatically transitioned Basta from full-time employment to part-time employment as an accommodation at the time it granted Anna Naditz's request. The Defendant had no idea at that time whether Basta would be able to perform a part-time job, as she was imminently going on medical leave of an unknown duration. Furthermore, Basta did not request part-time employment as a reasonable accommodation for her disability. A rule requiring the Defendant to make

Basta a part-time employee as she was about to take medical leave would require the Defendant to make a reasonable accommodation but not require that it be performed. Because such a rule would make little sense, it is not the law; employers are not required to make accommodations for employees who cannot perform the essential functions of their job under the limited reasonable accommodations mandated by the ADA. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 928 (7th Cir. 2001) ("When an employee is unable to perform the essential function of attending his employment, few, if any reasonable accommodations exist."); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) (an employer is not required to retain a disabled person who cannot perform the essential functions of his job given reasonable accommodations). "[G]eneral attendance is a requirement of a job," and the ADA does "not protect persons who have erratic, unexplained absences, even when those absences are the result of a disability." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). "[A]n employee who does not come to work cannot perform the essential functions of his job." *Nowak v. St. Rita High School*, 142 F.3d 999, 1003 (7th Cir. 1998). Basta's medical leave ended up lasting fourteen months. The ADA does not require an employer to hold open a job to accommodate an employee who suffers from a prolonged illness. *See Id.* at 1004. Thus, the Defendant did not violate the ADA by failing to provide Basta with reasonable accommodations. Because the Defendant did, in fact, supply Basta with reasonable accommodations for her disability as required by the ADA, she cannot

avoid summary judgment on her claim arising under the Act.

## V. Conclusion

Basta's failure to return to work after exhausting all of her leave time under the FMLA was a legitimate reason for the Defendant to terminate her employment. Treating Anna Naditz more favorably than Basta was done for the legitimate, non-discriminatory business reasons of the company. The Defendant therefore did not violate the ADEA. Likewise, the Defendant made reasonable accommodations for Basta's disability and therefore did not violate the ADA. The Defendant's termination of Basta upon her not returning to work following the exhaustion of her FMLA leave time was lawful. Defendant's Motion for Summary Judgment is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: January 11, 2012